fense and all of the jurors and witnesses, and everybody connected with the case, shall be dead, should he then conclude to make an application for pardon, he must prove his innocence beyond a reasonable doubt. Which is a complete change of the rules of evidence in that regard. Thus changing the burden of proof is not in keeping with the humane policy of advanced civilization.

But in that respect and for that reason the law is also valid, as the legislature has power to provide upon whom the burden of proof shall rest.

It is not clear just what the object of the legislature was in passing this law. Sufficient it is to say, that murder in the first degree should altogether be wiped from the statute, or this law repealed. If the passage of this law as amended was intended to wipe out capital punishment, then it can be said that the legislature fired a blank cartridge.

In cases of deliberation and premeditation, why should there be two kinds of punishment? Life is as sacred and valuable, in the eyes of law, in the one case as in the other.

The verdict is amply supported by testimony. Therefore the motion for a new trial is overruled.

John C. Schwartz and Thomas Darby, for the state.

J. D. Ermston, for defendant.

---

(Hamilton Co., O., Common Pleas.)
JAMES WALSH & CO. v. EUGENE LEWIS, AUD.

Dow Law Tax—What will not be "sales made at the manufactory by the manufacturer"—

WRIGHT, J.

Plaintiffs operate distilleries in Indiana and in Kentucky, as well as a rectifying house in Covington, Ky. They maintain in Cincinnati, Ohio, a main office in which is kept the books and accounts, and samples of the various goods sold by them. At this office are received the orders from commercial travelers, the mail from customers, and at this office is conducted the general management of the business. Goods are shipped from the Indiana and Kentucky plants to Ohio customers by direction from the Cincinnati office, upon the receipt there of orders.

The statute (8899, R. S.,) excepts from the operation of the Dow Tax, "sales at the manufactory by the manufacturer". I am of the opinion that the sales made by plaintiffs in the conduct of their business are not made at the manufactory, and that the firm are subject to the tax.

The petition is dismissed.

---

(Hamilton County, Probate Court.)
January, 1897.
IN RE ESTATE OF JOHN MULLEN.

The fact that the estate of the husband is insolvent does not have a controlling effect in determining the amount of the one year's allowance to the widow, but is only one of the elements to be taken into consideration in arriving at such amount.

Heard on application to reduce the widow's allowance.

The appraisers of the estate set off to the widow, under the provisions of section 6240, the sum of $1,000 for the widow's first year's support. The Woodburn Loan & Building Association, a creditor of the estate, applied for a reduction of the allowance on the ground that it was excessive, and that the estate of the decedent is insolvent.

FERRIS, J.

In matters of provisional alimony, where the amount allowed is in question, the court will take into consideration the age of the widow, her physical condition, the manner in which the decedent lived prior to his death, and the general expenses incident to the care of the family. The matter of the insolvency of the decedent does not have a controlling effect in determining the amount of the allowance, but is one of the elements to be taken into consideration. The claim of the widow for support during the first year is a lien prior to the claims of creditors (1 Werner, 380).

In the case at bar, the estate being insolvent, the policy of law is not toward liberality, but such an amount should have been fixed by the appraisers as would provide a proper support for the widow, there being no minor children under fifteen years of age.

Allowance reduced from $1,000 to $500.

George W. Hengst and W. A. Hicks, for the creditors.

Archer & Osler, for the estate.

---

(Hamilton County, Common Pleas Court.)
January 1897.
ELIZABETH SHRODER v. JOHN G. OVERMANN, CLERK, et al.

The statutes authorize the suspension of the rule requiring that ordinances providing for street improvemnts be read a second and third time, and on three different days.

The slipping of an imperfectly made street upon an abutting owner's lot is merely an incident, and is not a defense against the assessment.

---

On demurrer to the third, fourth and sixth causes of action set up in the petition.

Plaintiff brought an action against the village of St. Bernard, the clerk thereof, and the auditor and treasurer of Hamilton county, praying for an injunction to restrain the collection of an assessment levied for the improvement of Church St. in the village of St. Bernard, Hamilton Co. Among other things complained of by the

plaintiff in the petition were the following grounds or causes of action:

"Third. Plaintiff avers that said ordinance to improve said Church street was not legally passed and is void, for the reason that the same was not read on three different days before its passage by the council of the village of St. Bernard. Plaintiff says that said ordinance to improve had its first reading in council on June 15th, 1893, and on motion the rules were suspended for the purpose of passing said ordinance to improve, and said ordinance thereupon was passed, but never had a second or third reading.

"Fourth. The ordinance passed on or about the 16th of August, 1894, to assess property for the expenses of said improvement, was not legally passed, for the reason that it was not read upon three different days, nor were the rules suspended for the purpose of dispensing with such readings on three different days, but said ordinance had but one reading for its passage."

"Sixth. Plaintiff avers that said improvement (of Church street) has been constructed in an imperfect and unworkmanlike manner so that the earth from said street abutting upon said plaintiff's property has slipped upon said plaintiff's premises and damaged the same in an amount larger than said assessment."

To these three complaints or causes of action, the defendants, the village of St. Bernard and John G. Overmann, its clerk, demur.

BUCHWALTER, J.

Much as I dislike to encourage any tendency to laxity in the observance of the safeguards sought to be put around public improvements, yet I hold that the statutes authorize a suspension of the rule requiring ordinances to be read the second and third time as well as on three different days, and I therefore hold that the demurrer to the third and fourth defenses set up in the petition, is well taken, and do therefore sustain the same.

As to the sixth defense the plaintiff pleads that the street was constructed in an imperfect and unworkmanlike manner, and had slipped (the material got on the plaintiff's lot). That the slip passed in to the plaintiff's lot and damaged the same is only an incident. The damage to the lot is surplusage and is no defense, but the failure to make a street is a defense to the assessment if true.

The demurrer to this cause of action is overruled.

Gorman & Thompson, for the Demurrer.
Theodore Horstman, for the Plaintiff.

---

(Hamilton Couunty, Common Pleas Court.)
February, 1896.

WOLF v CINCINNATI EDISON EL. CO.

Damages for depreciated market value of property due to a nuisance arising from the operation of defendant's plant, are prospective, and can only be allowed justly and logically in actions in their nature for permanent injury.

---

BUCHWALTER, J.

The defendant moves for a new trial and to set aside the general verdict for $10,105. and so much thereof as found by special verdict, viz., $7,500 to represent the depreciation of the market value of plaintiff's property by reaosn of the injury caused by the operation of the defendant's plant.

The special verdicts fix also the damages to the rental uses, and by discomfort to plaintiff in the occupancy of a part of the property. And also find no actual injury to the structure or improvements upon plaintiff's lot.

The court finds no reason to disturb any of the special verdicts, nor the general verdict except as to so much as represents the depreciation of the market value of the premises represented by $7,500. There is no doubt that plaintiff has suffered loss in depreciation of the saleable quality of her property, as well as of the rents and the use and occupancy. But is she entitled to a recovery therefore in this action? There is no legal damage caused by the construction of the plant, but there is by the operation, especially by the noise and vibration. The plaintiff's pleadings in (connection with the written agreement on file as to the scope of the trial), do not clearly state whether she asks recovery for a permanent or continuous nuisance, or whether her damage is to be determined by the one or by various actions.

There is authority for the recovery of depreciated market value as damages where the right of action is continuous, and the remedy is sought in succeeding suits at law; but the weight of authority limits recovery therefor wherein the nuisance is in its nature permanent, and the whole damage is sought to be recovered in one action. There is a line of respectable authority also which permits a recoevry for depreciation of the market value, where the nuisance is not clearly of a permanent nature, but is so pleaded and treated on the trial, thus making final estimate of all damages in the one action. Depreciation of market value is dependent upon the future prospective conditions reasonably surrounding the property. The price it would bring at a sale would be affected by the knowledge that the nuisance was either to abate at once, or continue in the fu ure. Damage for such depreciation therefore is prospective, and can only be allowed justly and logically in actions in their nature for permanent injury.